The plaintiff declared in two counts:
First. For the loss of 2,300 bushels of rice, which was destroyed by fire by the negligence of the defendant.
Secondly. On a special contract, that the plaintiff should have the turn of the defendant, at the defendant's rice mill, by a breach of which, the rice of the plaintiff was destroyed by fire.
It was proved that Potter and Wade were partners. *Page 185 
James Pettiway testified that Wade was the active partner and superintended the mill. The mill was burned in February, 1844. In October, 1844, at the request of plaintiff, he demanded of Potter 2,300 bushels of rice, to which the latter replied, "It was nothing more than he expected."
Thomas D. Meares testified, that the custom at the mill was that each planter had a turn at the mill of 1,500 bushels, and to secure this, a deposit of 200 or 250 bushels was necessary; that on the morning after the fire, he had a conversation with Wade, and he said that he (witness) had in the mill, at the time of the fire, 1,300 or 1,400 bushels, and that plaintiff had lost much more than that, and that Potter had lost about 15,000 bushels.
Plaintiff's counsel asked witness what Wade said as to the (242) cause of the fire. The defendant's counsel objected to the question, but the objection was overruled, and defendant excepted.
The witness proceeded; that Wade said the fire originated from the journals, and that these were of wood, and were on the upper floor; that Wade said further, he was in the habit of going over the mill every night to see that all was right before closing, but on the evening before he had neglected to do so, as he was much fatigued; that the journals, as he said, had caught on fire before. He further stated that Wade was mistaken as to the quantity he (the witness) had in the mill, for that it was only 800 or 900 bushels; that clean rice was worth, at that time, $2.25 to $2.75 per 100 pounds, and rough rice about one-fourth as much; that the general custom was to give receipts, and that the rice was at the risk and control of the owner; that this was expressed in the receipt.
The counsel of the defendant read in evidence a notice served on the plaintiff, to produce the receipt he had received from the mill for the rice deposited.
The defendant was a rice planter, and was entitled to his turn in the mill. The toll charged for beating was 10 per cent. This mill was run by steam power. The principal risk in mills of this kind was from fire. The wooden journals are liable to take fire if neglected. Mr. Quince testified that he had been familiar with rice mills for thirty years; that they are much subject to fire, and great care has to be used to prevent fire; that according to the custom in this business the rice is at the risk of the owner, and subject to his control; that it was usual to make a small deposit at the mill to secure a "turn," and just before it came round to deposit the remainder, say 1,500 bushels; this course was pursued on account of the danger of fire; that the owner of a mill, if a planter, had a turn.
Stanton Spooner testified that he was employed in the mill at the *Page 186 
time the fire occurred; that there was no negligence; that on the (243) evening before the fire, on closing the work of the day, Wade went through the mill and carefully examined the mill, and saw that everything was right; that Potter did give Ashe one turn, and that Ashe only had about 500 bushels of rice in the mill when the fire occurred; that it was the uniform custom to give receipts to persons bringing rice to the mill, expressing the quantity and the terms on which the rice was received.
The counsel for the defendant contended that the contracted to give the plaintiff his turn at the mill was but a nudum pactum, also that the nonproduction of the receipt given by the mill-owner to the plaintiff created a presumption against his claim. The court declined giving the instruction asked, upon the ground, in the latter instance, that there was no evidence that such receipt had come to the hands of the plaintiff. The defendant's counsel excepted.
The Court charged the jury that if they were satisfied that there was a contract that the defendant was to give his turn, and that this agreement was made in contemplation of the imminent risk of fire, and the defendant did not give his turn and his rice was destroyed by fire, then, the plaintiff was entitled to recover the value of the rice destroyed. If they found that the contract was made, not in contemplation of the imminent risk by fire, and there was a breach of it, and the plaintiff's rice was destroyed by fire, the plaintiff was entitled to nominal damages.
If they were satisfied from the evidence that beating rice was attended with great risk from fire, and that the fire originated in the journals, and that the defendant did not see that all was right before closing on the night before the fire, then, the defendant was guilty of gross negligence, and the plaintiff was entitled to recover the value of the rice destroyed by the fire. Defendant's counsel excepted to the charge. Verdict for $2,930.20. The writ, in the case, claimed damages to the amount of $1,500, but his Honor permitted the writ to be amended without (244) costs, so as to correspond with the verdict, and the court gave judgment accordingly.
Defendant appealed.
The case is complicated by the fact that, in respect to the count against the defendant as owner of the mill, Wade, who was a partner, has a direct interest, being liable to the defendant for contribution; whereas, in the other count against the defendant, on his collateral individual promise, "to give plaintiff his turn," Wade had no interest. *Page 187 
The verdict being general, an error as to either count is ground for a new trial, and according to the view taken of the case by this Court there are many fatal errors in regard to each of the counts.
FIRST COUNT.
1. His Honor was of opinion that there was no evidence that "a receipt" for the rice had ever come to the hands of the plaintiff. There was proof of a general custom at the mill to give a receipt, "stating the quantity of rice, and that it was at the risk and under the control of the owner," whenever rice was delivered. In the absence of any evidence showing that, for some cause or other, the custom was departed from in the instance of the plaintiff, there is a violent presumption that he did take "a receipt."
2. The purpose of these receipts was to fix the quantity of rice delivered at the mill by the respective customers. It was what is called in the books, "preordained evidence," that is, evidence agreed on by the parties as the mode of proof in respect to the quantity of rice and the terms on which it was delivered — like a subscribing witness to a bond. In such cases, this preordained evidence is not merely the primary, but it is the only evidence to which either party can resort, without proof of his inability to produce it. In the case of a subscribing witness, the principle is of every day's occurrence; to prove a bond or other instrument the subscribing witness must be produced; if that be impossible, then his handwriting must be proved, (245) and the party is not at liberty to disregard this preordained evidence and prove that the obligor or maker of the instrument had admitted that he executed it, unless such admission be what is called "an admission in the cause," made expressly for the purpose of dispensing with the production of the subscribing witness.
According to this principle of evidence, the plaintiff ought not to have been allowed to proceed with his case by attempting to show aliunde the quantity of rice, until proof was made on his part of his inability to produce the receipt. In this case, out of abundant caution, the defendant had given him notice to produce it, and still he was allowed to proceed, and, in effect, attempt to prove the contents of the receipt, to wit, the number of bushels of rice that he had delivered at the mill.
3. His Honor was of opinion that the demand for 2,300 bushels of rice, and the defendant's reply, "it was nothing more than he expected," was evidence of the quantity. Apart from the considerations above stated, we do not agree with his Honor in this view of the evidence. It is very difficult to draw a line between slight evidence and no evidence at all; but taken in connection with the fact, deposed to by the witness, Pettiway, who made the demand and proves the reply, that Wade was the *Page 188 
active partner and superintended the mill (so that the defendant could not be supposed to know the quantity of rice delivered by the customers), it seems to us to be a strained construction, to give these words of the defendant any reference to the quantity of rice, and they are fully satisfied when taken in their ordinary sense, to mean that the defendant was not surprised by the fact of a demand being made as preliminary to an action against him; for that the intention of the plaintiff to sue him was "nothing more than he expected."
In this connection, it is proper to remark that, although the power of the court to allow an amendment after verdict, so as to increase the amount of damages claimed by the writ, is conceded, still in (246) most cases it should be sparingly exercised. Where, by the long pendency of the suit, an amendment becomes necessary, as in ejectment, where the term, laid in the demise, expires, or in debt, or in assumpsit, where the interest exceeds the damages laid in the writ, the amendment is matter of course. In actions where there is no particular measure of damages, as slander, assault and battery, and new matter occurs to aggravate the offense, e.g., a repetition of the slander after suit brought, or relying on the plea of justification, where there is no ground for it, or where the wound inflicted takes a dangerous turn, and the plaintiff is likely to lose a limb, or the like, the discretion of the court may be properly appealed to; but in actions where there is a fixed measure of damages, as in our case — the value of the rice — a case rarely occurs where the purposes of justice require the exercise of this power; for every man is presumed to know best his own business, and to claim all that he thinks he is entitled to. In such cases this presumption ought to be rebutted, and something offered for the court to amend by; as by the production of the receipt and showing thereby beyond all question a mistake in regard to the quantity of rice. The usual course, however, is to allow the plaintiff to remit so much of the damages found as exceed the amount claimed, so as to make the verdict fit the writ; Grist v. Hodges,14 N.C. 203.
SECOND COUNT.
1. In addition to the above, which applies to both counts, Wade, the partner of the defendant in the mill, had no interest in this count, as it was for the breach of a collateral promise. So, he was a competent witness for either party in respect to it, and of course his admissions or declarations, were not admissible as evidence against the defendant. There was no test of truth, as in this respect they were not against his interest, and did not tend to subject him to liability; and this produces the incongruity of joining the two counts. *Page 189 
2. The alleged promise of the defendant was to let the plaintiff have "his turn." The witnesses state that a turn was 1,500 (247) bushels of rough rice. So, under this count the plaintiff could not recover for any larger amount.
There is no evidence of a consideration to support the promise. It was suggested on the argument that the promise was made by the defendant, in order to induce the plaintiff to send his rice to the mill, or in order to keep him from taking it away after it had been delivered, as he had a right to do by the terms of the receipt, and thus the defendant, being a part owner of the mill, had a direct interest. It is true, if the defendant made the promise for either of these purposes, there would be a consideration; but we are unable to see any evidence of the fact, either that the plaintiff did not intend to send his rice to the mill or intended to take it away, and that the promise was made to induce him to change his purpose. On the contrary, if permitted "to guess" about the matter, we should suppose that the promise was a voluntary offer of kindness on the part of the defendant to let the plaintiff have his turn, in order to accommodate him by enabling him to get a portion of his crop that much sooner into market.
4. His Honor leaves it to the jury to say whether the promise was made "in contemplation of the imminent risk from fire." There was no evidence of this as a matter of fact, and this Court had decided, when this case was before it at June Term, 1858 (50 N.C. 301), that it could not be inferred from the nature of the transaction "that the contingency that the rice might be burnt, if left in the mill, was in contemplation of the parties." On what ground could the jury, or any one else, infer that the defendant made the promise because he knew there was great risk from fire, and if any rice was to be burnt he preferred that it should be his own, rather that the plaintiff's? Or that the plaintiff intended, and was willing, in accepting the offer of the defendant's turn, to take advantage of such unheard-of generosity? So, notwithstanding the opinion of the jury, as it is a mere matter of opinion, and there is no evidence in regard to it, we are disposed to adhere to the opinion previously expressed by us. (248)
The usual practice of this Court is to put its decision on some one point presented by the case, and to refrain from the expression of an opinion in regard to others that may appear in the record. This was the course taken when the case was here before, and the result is that it comes back now with more points than ever. On which account, we have seen proper to make an exception to our usual practice, and to pass on several of the exceptions, presented by the record, with the hope of "lopping off some of the points," thereby relieving the next judge who *Page 190 
tries the case from the embarrassment incident to the joinder of the two counts.
PER CURIAM. Error.
Cited: Mace v. Ramsey, 74 N.C. 15; Spencer v. Hamilton, 113 N.C. 50,52; Extinguisher Co. v. R. R., 137 N.C. 281; Tomlinson v. Morgan,166 N.C. 561; Bank v. Wilson, 168 N.C. 560.